UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-62262-CIV-MARRA

DAVID F. DAMERAU,

    Appellant,

v.

FPH PROPERTIES, LLC,

    Appellee.
_____/

## OPINION AND ORDER

This cause is before the Court on the appeal by David F. Damerau ("Damerau" or "Appellant"). Appellant seeks review of the Bankruptcy Court's Order Granting the Motion for Summary Judgment and the Final Judgment in favor of FPH Properties, LLC ("FPH" or "Appellee") [DE 1-1, 1-2]. The Court has carefully considered the appeal, the briefs of the parties, the entire record on appeal, and is otherwise duly advised in the premises.

Also before the Court is Damerau's First Motion for Extension of Time to Serve Initial Brief [DE 7]. Damerau indicates that the extension of time was necessary because his attorney was in the process of withdrawing from the appeal. FPH opposes this motion, arguing that Damerau has not shown sufficient cause for having missed the deadline to file his brief. [DE 9].

Although Damerau's counsel never formally withdrew from this appeal, it is obvious that Damerau is appearing *pro se*. He moved for an extension of time to file his brief a mere five days after his brief was due and filed his brief two weeks thereafter. The Court sees no prejudice

1

to FPH, and, in the interest of justice, grants Damerau's request for an extension of time to file his brief. "Filing briefs . . . is not a jurisdictional pre-requisite . . . Thus, the more flexible standard requiring bad faith, negligence or indifference is appropriate with regard to filing briefs." *Brake v. Tavormina (In re Beverly Manufacturing Corp.)*, 778 F.2d 666, 667 (11th Cir. 1985). "Dismissal typically occurs in cases showing consistently dilatory conduct or the complete failure to take any steps other than the mere filing of a notice of appeal." *Id*. The facts of this case do not meet this standard.

**I. Background**

The factual summary set forth herein is derived from the Bankruptcy Court's Order; the Order issued by the State Court, which was relied upon by the Bankruptcy Court in rendering its decision; the Parties' briefs; and the Record on Appeal.

FPH (as the "Investor") and 22nd Century Properties (as the "Developer") entered into an Operating Agreement ("Agreement") and became the sole members of Fort Lauderdale Homes, LLC ("FLH"). Appellant Damerau (the owner of 22nd Century) was a party to the Agreement to guarantee certain obligations of the Developer. [DE 2-7]. The venture was created to acquire, renovate or develop, and sell for profit, single family homes in South Florida. [*Id*.]. Pursuant to the Agreement, 22nd Century and Damerau presented FPH with three pro forma development budgets for the acquisition and construction of three separate parcels of real property. One was located at 1241 Middle River Drive, Fort Lauderdale, FL 33304 (the "Property"), which is the property at issue in the instant appeal.

FPH eventually sued 22nd Century and Damerau in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. FPH's Second Amended Complaint in the

State Court action states that: "This is an action for: (1) an accounting; (2) breach of agreement; (3) breach of fiduciary duty; and (4) fraud." [DE 2-9 at 16, ¶1]. The State Court found that

> Damerau and 22nd Century created fictitious contracts, settlement statements and distribution statements which were intended to and did defraud FPH from its rightful share of the Company's profits regarding [two of the parcels]. Damerau and 22nd Century further failed and refused to transfer [the Property] to the Company. Instead, Damerau and 22nd Century have deprived the Company of its property; Damerau has converted [the Property] to his own use; and FPH has been damaged.

[DE 2-7 at 33]. The State Court further found that

> Defendants, 22nd Century and Damerau, breached their Agreement with FPH, breached their fiduciary duties to FPH and perpetrated a fraud against FPH. . . .This court further finds FPH is entitled to punitive damages.

[*Id*.]. The State Court awarded FPH damages against 22nd Century and Damerau jointly and severally in the amount of $3,130,453.95 (including fees, costs and interest) and reserved jurisdiction to award punitive damages. [DE 18-1 at 7]. Damerau took an appeal from the State Court Order. The lower court's decision recently was affirmed. *22nd Century Properties, LLC and David Damerau v. FPH Properties, LLC*, No. 4D12-3420, 2014 Fla. App. LEXIS 9296 (Fla. 4th DCA, June 19, 2014).

Shortly after the State Court Judgment was issued, Damerau filed a voluntary petition under Chapter 11. The case was converted to Chapter 7. FPH filed an adversary proceeding objecting to Damerau's claimed exemptions relative to the Property, and further requested a determination of the extent, validity, priority and imposition of an equitable lien or constructive trust relative to the Property. FPH brought a summary judgment motion that was granted by the Bankruptcy Court which is the subject of this appeal.

3

At issue in this appeal is whether the Bankruptcy Court's legal determination that it was bound by the prior State Court Judgment to hold that the "Property" is property of FPH and not homestead property of Mr. Damerau was correct.[1]

### A. The Bankruptcy Court Decision

FPH challenged Damerau's attempt to claim an exemption in bankruptcy for the Property, which Damerau claims to be his homestead. In bringing the summary judgment motion that is now before the Court on appeal, FPH argued that this issue had been determined by the prior State Court Judgment. The Bankruptcy Court adopted this position, stating that the prior State Court Judgment had determined that Damerau obtained the property under false pretenses, false representations, and actual fraud. The Bankruptcy Court found that it was constrained to respect this State Court Judgment.[2]

---

[1] FPH argues that although the homestead issue is argued inDamerau's Brief, it cannot be decided by this Court because that is not how the issue was framed inDamerau's Rule 8006 Statement of Issues to be Presented on Appeal. FPH argues, therefore, that the entire appeal is moot. [DE 18 at 11-13]. Damerau argues that the Statement of Issues is broad enough to subsume this issue. Damerau notes that "[a]ll of the issues raised on appeal revolve around the 1241 property and whether it was in fact 'homestead' property or rather 'company' property and whether Damerau's Homestead was subject to a constructive trust for the benefit of FPH." [DE 19 at 6]. The issues were framed by Damerau in his Rule 8006 Statement as follows: "(1) Whether the Bankruptcy Court erred in determining that the State Court Final Judgment conclusively precluded litigation of FHP's Adversary Complaint for Constructive Trust where the remedy of constructive trust was not sought or plead in the State Court and the State Court Final Judgment did not grant a constructive trust or mention the word 'trust' in any way. (2) Whether the Bankruptcy Court erred in awarding the real property located at 1241 Middle River Drive to Appellee, FPH Properties, LLC, rather than to the joint venture company, Fort Lauderdale Homes, LLC." [DE 2-22 at 2]. The Court finds that the first stated issue subsumes review of the legal finding by the Bankruptcy Court that the Property is not Damerau's homestead.

[2] FPH brought a discrete Complaint Objecting to Dischargeability of Debt, [DE 2-23], and a separate motion for summary judgment before the Bankruptcy Court seeking a determination that the judgment it holds against Damerau should be excepted from discharge.

4

The Bankruptcy Court further held that since the State Court had already determined that the Property at issue was property of FPH, it follows that Appellant could not declare a homestead over that Property.  The Bankruptcy Court held that although Damerau has legal title to the Property, it is bare legal title, and beneficial title is held in benefit of and in constructive trust for FPH. [DE 1-1, 1-2].

### B. Damerau's Position.

Damerau notes that the State Court Judgment was based upon breach of contract, fraud and conversion, for which a lump sum was awarded. At no point in time during the State Court action did FPH seek to have the Property given to it or placed in a constructive trust for it.  The State Court Judgment did not contain any equitable relief, nor did it order a change in ownership of the Property at issue. [DE 10 at 7, 18]. Damerau argues, in part, that the Bankruptcy Court erred in granting summary judgment to FPH and in creating a constructive trust, because the State Court Judgment did not collaterally estop the litigation of these issues before the Bankruptcy Court. [*Id*. at 11].

### C. FPH's Position.

FPH argues that Damerau waived any challenge to the denial of his homestead exemption by failing to cite it in his statement of issues on appeal.[3] FPH further argues that even if the

---

[DE 2-24].  The Bankruptcy Court granted that motion, [DE 2-27], and entered a Final Judgment in Favor of FPH thereon. [DE 2-28].  No appeal was taken from that Order or Final Judgment, nor has Damerau briefed the issue of whether the Judgment should have been excepted from discharge. [DE 10]. This Court will not, therefore, review the holding below on the issue of dischargeability.  The State Court Judgment is, therefore, not dischargeable in Damerau's bankruptcy case.

[3] As noted *supra* , n.1, the Court rejects this argument, finding the issue subsumed by the issues as stated.

5

homestead issue were properly before this Court, denial of the exemption was mandated by the State Court decision. [DE 18 at 9].

**II. Legal Standard**

There is a dispute between the Parties as to the appropriate legal standard for this Court to use in this appeal. Damerau argues that the Court should review the Bankruptcy Court's order granting summary judgment *de novo* on appeal, citing *In re Kingsley*, 518 F.3d 874, 876 (11th Cir. 2008) and *In re Fleck*, 242 B.R. 188, 190 (M.D. Fla. 1999) . FPH argues that this Court should review the Bankruptcy Court's factual findings for clear error[4] and its legal conclusions *de novo*, citing *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1502 (11th Cir. 1984)(which held that in evaluating the application of collateral estoppel, the determination of those issues that had been actually litigated in a prior proceeding was a factual question subject to the clearly erroneous standard), and *Richardson v. Miller*, 101 F.3d 665, 667-68 (11th Cir. 1996)("This court reviews a district court's conclusions on res judicata and collateral estoppel *de novo* and the legal conclusion that an issue was actually litigated in a prior action under the clearly erroneous standard."). This Court need not resolve this dispute, as under both standards put forth by the parties, the result is the same.

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court

---

[4] Courts do not make factual findings when deciding summary judgment motions. Rather, they draw legal conclusions from undisputed facts.

6

should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

The Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-movant. *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). "All reasonable doubts about the facts should be resolved in favor of the non-movant." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1280 (11th Cir. 2004)(citations omitted).

### III. Discussion

The Bankruptcy Court ruled that pursuant to the *Rooker-Feldman* doctrine[5], it was constrained to follow the State Court's Judgment. [DE 1-1 at 3]. This reliance upon *Rooker-Feldman* was misplaced. As the Eleventh Circuit noted in *Nicholson v Shafe*, 558 F.3d 1266 (11th Cir. 2009), the Supreme Court, in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), held that the *Rooker-Feldman* doctrine is

> "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." . . . Drawing on the facts of *Rooker* and *Feldman*, the Supreme Court delineated the scope of the *Rooker-Feldman* doctrine: when the "losing party in state court file[s] suit in federal court after the state proceedings end[ ], complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." . . .The Court noted that parallel state and federal litigation does not trigger the *Rooker-Feldman* doctrine "simply by entry of judgment in state court." . . . Rather, preclusion law would govern the federal action once the state court adjudication was complete.

---

[5] In the case of *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court explained that the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review." *Id.* at 284-86; *see Bates v. Harvey*, 518 F.3d 1233, 1241 (11th Cir. 2008). Under the *Rooker-Feldman* abstention doctrine, "[i]t is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Harper v. Chase Manhattan Bank*, 138 F.Appx. 130, 132 (11th Cir. 2005)(citation omitted).

558 F.3d at 1273-74(citations omitted). The Eleventh Circuit held that "state proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action that complains of injuries caused by the state court judgment and invites review and rejection of that judgment." [*Id*. at 1279].

First, Damerau's Bankruptcy Court filing did not satisfy the requirements for application of the *Rooker-Feldman* doctrine. This doctrine applies "where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262-63 (11th Cir. 2012)(citations omitted). Neither situation is present here. First, granting Damerau the relief he is seeking in the Bankruptcy Court, namely, a determination that the Property is exempt from execution, would not "effectively nullify" the judgment FPH obtained in the state court proceeding. This is so because the state court only granted FPH monetary relief against Damerau, and granted no relief against the Property itself. Thus, a finding that the Property is exempt from execution would not nullify the judgment. Additionally, Damerau's federal claim of exemption is not dependent on the state court money judgment entered against him being wrongly decided.

A separate inquiry is whether Damerau is collaterally estopped by the State Court Order and Judgment from re-litigating issues before the Bankruptcy Court. Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."

9

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)(citation omitted).

The Eleventh Circuit has explained that "[i]f the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *St. Laurent v. Ambrose, (In re St. Laurent)*, 991 F.2d 672, 675-76 (11th Cir.1993).  Under Florida law, collateral estoppel applies if "1) the identical issues were presented in a prior proceeding; 2) there was a full and fair opportunity to litigate the issues in the prior proceeding; 3) the issues in the prior litigation were a critical and necessary part of the prior determination; 4) the parties in the two proceedings were identical; and 5) the issues were actually litigated in the prior proceeding." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1078-79 (11th Cir. 2013)(citations omitted).

The prior State Court Order and Judgment did not collaterally estop litigation of all the issues before the Bankruptcy Court, because all the issues before the State Court were not identical to those before the Bankruptcy Court.  The issues before the State Court were whether there was a breach of the Agreement; a breach of fiduciary duty; fraud committed relative thereto; and whether damages should be awarded.  The issues before the Bankruptcy Court all related to whether the Property was exempt under the bankruptcy laws from execution by FPH and whether FPH is entitled to an equitable lien or constructive trust relative to the property.

When FPH sued Damerau in state court, as a party seeking relief based upon fraud or conversion, FPH had to elect whether to pursue money damages or the return of property.  *See, e.g., United Companies Fin. v. Bergelson*, 573 So.2d 887 (Fla. 4th DCA, 1990).  It elected money

damages. [DE 2-9].[6]  For FPH to now argue before the Bankruptcy Court that it is the equitable owner of the Property is contrary to the election of remedies doctrine.

> The doctrine of election of remedies exists to prevent a party from recovering twice for the same wrong . . . Appellee's suit for conversion compensated them for the loss of the real property.  A favorable judgment in their suit for title of the real property would amount to a double recovery . . .
> . . .(Appellees) cannot be compensated for the loss of the real property and then later obtain the real property.

*United Companies Fin.*, 573 So.2d at 888.

Furthermore, once this election was made, the State Court could not, and did not, determine that the Property was "property of FPH Properties, LLC" as stated in the Bankruptcy Court opinion.[7]  Nor did the State Court Judgment give FPH a constructive trust over the Property.[8]

Based upon this clearly erroneous interpretation of the State Court decision, the Bankruptcy Court went on to hold that, "It naturally flows that Mr. Damerau could not declare a

---

[6] FPH's Second Amended Complaint in the State Court action states that, "This is an action for: (1) an accounting; (2) breach of agreement; (3) breach of fiduciary duty; and (4) fraud." [DE 2-9 at 16, ¶1].  It concludes that FPH "demands judgment against Defendants, Damerau, . . . for compensatory damages, pre-judgment interest, costs, and such additional and further relief as the Court deems just and proper." [*Id*. at 31].

[7] The language in the State Court's Amended Final Judgment is not to the contrary.  It states that "Damerau and 22nd Century have deprived the Company of its property; Damerau has converted 1241 to his own use; **and FPH has been damaged**." [DE 2-7 at 33, Emphasis added].  The comment by the State Court that the Company had been deprived of its property constituted the basis, in part, for the damages awarded by the State Court.  It did not mean that FPH was to obtain title to the property.

[8] It is clear to the Court that FPH was also not the proper entity to which such relief could have been given, but in light of the analysis herein, it is unnecessary for the Court to address that issue.

homestead over that company-owned property . . . ." [DE 1-1 at 3]. Since there has been no prior judicial determination that the Property was owned by FPH, constructively or otherwise, the question of whether a constructive trust should be imposed in favor of FPH, or whether Damerau can claim the Property as his homestead, cannot be determined simply by referring to the State Court Judgment alone. Since the Bankruptcy Court misapplied the *Rooker-Feldman* doctrine and erroneously concluded that the State Court Judgment bound it to rule in favor of FPH, without any other legal analysis, summary judgment was improperly granted to FPH.

That does not mean, however, that FPH cannot ultimately prevail on its attempt to either execute against the Property or impose an equitable lien or constructive trust on the Property. Nor does it mean that the findings in the State Court Judgment will have no role in the ultimate decision that the Bankruptcy Court must make. To the extent issues necessary for resolution of the questions relating to exemption, equitable lien or constructive trust were actually litigated in the state court proceeding, collateral estoppel may apply. The Bankruptcy Court, however, never analyzed the elements required for any of the legal relief sought by FPH to determine whether the record before it warranted the granting of summary judgment. Rather, it erroneously concluded that the State Court Judgment had already determined that the Property was FPH's, and therefore it could not be Damerau's homestead. Since the State Court never made that determination, the Bankruptcy Court's ruling stemmed from a faulty premise.

The case is therefore remanded to the Bankruptcy Court to make its own independent determination of what relief to award, taking into consideration, if appropriate, any findings from the State Court Judgment that may properly be given preclusive effect.

## IV. Conclusion

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that

1. Appellant's First Motion for Extension of Time to Serve Initial Brief [**DE 7**] is **GRANTED**.

2. The Decision and Judgment on appeal from the Bankruptcy Court **[DE 1]** are **REVERSED**. The case is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.

3. This case is **CLOSED**, and all pending motions not addressed herein are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of June, 2014.

_____
KENNETH A. MARRA
United States District Judge